# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JACKIE S. BERGER,

                Plaintiff,

v.                                      Case No.:  3:21-cv-97-MMH-JBT

JOHN GODWIN, et al.,

                Defendants.

---

## <u>ORDER</u>

### I.  Status

    Plaintiff Jackie S. Berger, an inmate of the Florida penal system, initiated this action on January 18, 2021,[1] by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1, Complaint). As Defendants, Berger names Assistant Warden John Godwin, Assistant Warden B. Allen, Colonel G.H. Waldron, Regional Director John Palmer, Warden C.E. Lane, Assistant Regional Director T.J. Anderson, Officer M. Henck, and Dr. F. Cruz-Vera ("Defendants"). Each Defendant is an employee of the Florida Department of Corrections (FDOC) or one of its contractors. In the Complaint, Berger sues Defendants for violating his constitutional rights pursuant to 42 U.S.C. § 1983, which provides a federal cause of action for "the deprivation of any rights …

---

[1]    See <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (prison mailbox rule).

secured by the Constitution and laws of the United States." <u>Wilder v. Virginia Hosp. Ass'n</u>, 496 U.S. 498, 508 (1990) (internal quotation marks omitted). Berger raises federal constitutional claims of retaliation, the use of excessive force, failure to intervene, and deliberate indifference to a serious medical need. He also asserts state law claims of assault, battery, and negligence. As relief, Berger seeks compensatory damages, punitive damages, and injunctive relief.

All Defendants have filed motions seeking dismissal of the Complaint, arguing that Berger failed to exhaust his administrative remedies. Allen, Lane, and Henck's Motion to Dismiss (Doc. 18); Palmer and Godwin's Motion to Dismiss (Doc. 34); Anderson's Motion to Dismiss (Doc. 40); Cruz-Vera's Motion to Dismiss (Doc. 47); Waldron's Motion to Dismiss (Doc. 64).[2] Berger filed responses opposing the Motions to Dismiss. Response to Allen, Lane, and Henck's Motion to Dismiss (Doc. 42); Response to Palmer, Godwin, and Anderson's Motions to Dismiss (Doc. 52); Response to Cruz-Vera's Motion to Dismiss (Doc. 65); Response to Waldron's Motion to Dismiss (Doc. 70). Because Defendants did not request leave to file a reply, the Motions to Dismiss are ripe for review.

---

[2]     Dr. Cruz-Vera raises additional arguments, but because the Court finds that this action is due to be dismissed based upon the failure to exhaust administrative remedies, the Court need not reach those other arguments.

## II. Berger's Allegations[3]

In October 2020, Berger was a close management inmate confined at Suwannee Correctional Institution (Suwannee CI). On October 8, 2020, he filed an informal grievance about unsanitary conditions and mold on the food trays, which he contended had caused a recent "mass infection" and food poisoning. Complaint ¶¶ 1–2, 6.[4] Berger blamed the unsanitary conditions on Warden Lane's deliberate indifference to inmate safety. See id. ¶ 2. A lieutenant "approved" the informal grievance, id. ¶ 3, but a few days later, Berger filed a formal grievance (Number 2010-230-052) because there had been no improvement regarding the moldy food trays and there continued to be a lack of cleaning supplies, id. ¶ 4. Berger asserts that he got a receipt for the formal grievance but no response. Id.[5]

Around 9:00 a.m. on October 20, 2020, two officers escorted Berger to the classification building for an interview with Warden Lane and the institutional classification team. Id. ¶ 7. There, he was placed in "full restraint devices (handcuffs/leg irons)." Id. While Berger was seated in the lobby, Officer Henck

---

[3]     For purposes of this Order, the Court accepts the factual allegations set forth in the Complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[4]     Berger does not raise any claims in this action based on the alleged food poisoning or unsanitary conditions of confinement.

[5]     Berger cites various exhibits throughout his Complaint, but he did not attach or submit any exhibits with the Complaint.

appeared and said something to Berger which suggested that Lane was hostile to inmate grievances. Id. ¶ 8. Lane then entered the lobby and told Berger he had "zero tolerance for writ writer's [sic] who think they [are] above and beyond my system." Id. ¶ 9.[6] Lane stated that he was surprised Berger had named him in three or four of his recent grievances, and said, "Let's go talk about them in the back office." Id. Berger, who interpreted Lane's statements as a threat of corporal punishment, told a nearby female officer he wanted to refuse the interview because he was in fear for his life. Id. ¶ 10. The female officer told Berger not to talk to her. Id. Lane then turned to Berger and said: "Berger you don't demand nothing. I summoned you for [an] interview. When I say you finished is when you finished and only then boy [sic]. Matter [of] fact go stand outside until your name [is] called. Berger do you hear me[?]" Id. ¶ 11. Berger states that "[f]rom the tone implied by Warden Lane, I decided it's of my best interest to remain quiet as not to provoke Mr. Lane's fury as he has [a] widely known reputation to have inmates beat" for "sport." Id. ¶ 12.

After a few tense exchanges with Lane, Henck, and some other officers, id. ¶¶ 13–18, Berger was escorted into Lane's office, where he met Lane, Assistant Warden Godwin, Assistant Warden Allen, Regional Director Palmer, Assistant Regional Director Anderson, Colonel Waldron, and an unknown

---

[6]     Berger's handwriting is at times hard to decipher.

4

female classification officer, id. ¶ 19. Godwin directed Berger to "stand over here and don't open your mouth nor blink your eyes unless told to do so." Id. ¶ 20. Palmer stated, "Mr. Lane you have my full support to do as you see fit – unabated. This situation involving these grievances disturb [sic] me in the worst way and frankly this needs to be nipped in the [bud]. Immediately." Id. ¶ 21. Lane proceeded to confront Berger about the two recent grievances blaming Lane for the unsanitary living conditions and food poisoning. Id. ¶ 22. Berger did not respond because he felt uneasy about the line of questioning, id. ¶ 24, prompting Godwin to reach behind him to remove a jar from a shelf and say, "Berger if you don't answer the boss your teeth will be in my glass jar with the rest," id. ¶ 25.

According to Berger, as he lifted his head to answer, Godwin grabbed him by the throat. Id. ¶ 26. Berger, who was still in full restraints, id., says he reflexively "ducked [his] chin" to prevent Godwin from gaining a complete chokehold around his neck, id. ¶ 29. Godwin's "choke hold" left Berger unable to breathe, so he shook his head from left to right to show he was not resisting. Id. ¶ 30. Then, Allen and Waldron grabbed Berger from behind and flung him across the room, causing Berger to slam into a desk, striking his groin and chest area. Id. ¶ 31. At this point Lane declared, "Berger[,] consider your grievance and appeal denied." Id. ¶ 33. As he did so, Lane "plac[ed] the

grievance (230-2010-0077) and [formal grievance] (2010-230-052) in [a] paper shredder behind the desk which completely destroyed the documents." Id.

After Lane shredded the grievances, Berger alleges that Palmer "came from around the desk [and] grabbed [him] by the chin[,] snapping [his] neck/head painfully back unnaturally." Id. ¶ 34. Doing so, Palmer said:

> Berger have you ever been to Vegas? Well like Vegas what happens in this office stays in this office. If not I will most definitely continue you on close management and have your black ass bent and shipped to FSP so fast your head will spin. That's if my officers leave you with a head.

Id. And Lane allegedly said:

> Berger I don't like seeing you this way but if I let you get away with this nonsense how many more will follow you[?] So you've got to understand my position but take my advice. You drop the grievances and I will see to it [you're] left alone. If not this (beating) will be a reoccurring theme[,] believe me.

Id. ¶ 35. According to Berger, Lane and Palmer "followed through on their threats of reprisal and retaliation as [he] was continued on close management as corporal punishment to deter free speech (grievances)." Id. ¶ 36. Berger also asserts that "when [an] investigation was initiated in the matter," his "assigned classification officer recommended 'release to open population based on positive behavior adjustment,'" which Berger believes is more proof of a retaliatory motive for him being placed in close management. Id.

Based on what happened in Lane's office, Berger asserts that Lane, Godwin, Allen, Palmer, Waldron, Anderson, and Henck retaliated against him for filing grievances, in violation of his rights under the First Amendment. See

id. ¶ 50. He also contends that Godwin, Allen, Waldron, and Palmer used excessive force, in violation of his rights under the Eighth and Fourteenth Amendments, id. ¶ 51, and committed assault and battery in violation of state law, id. ¶¶ 51, 55.[7] Additionally, Berger asserts that Lane, Palmer, and Anderson failed to intervene, in violation of his rights under the Eighth and Fourteenth Amendments. Id. ¶¶ 37–38, 52. Specifically, he alleges that Lane, Palmer, and Anderson could have intervened during the "unprovoked beating," but they deliberately failed to do so. Id. ¶ 37.

Berger also asserts a claim that Lane, Anderson, Palmer, Godwin, Allen, Waldron, and Henck were deliberately indifferent to a serious medical need. Id. ¶¶ 39–42, 53. Berger says that when he returned to the lobby, two officers noticed he was in pain and offered to notify the medical department, and that he declared a medical emergency based on the pain in his neck, chest, and groin area. Id. ¶¶ 39–42. According to Berger, Henck volunteered to call medical and to send a nurse to meet Berger at the dorm, but no nurse saw Berger that day to conduct a post-use-of-force exam. Id. ¶ 41. As a result, Berger contends he

---

[7]     Berger also alleges that Defendants violated Florida Statutes Section 944.35(3)(b), which concerns sexual misconduct, but Berger raises no such allegations in the Complaint. Berger likely meant to cite Section 944.35(3)(a), which makes it a misdemeanor for an employee of FDOC commit a battery "with malicious intent" upon an inmate.

"was denied access to medical personnel capable of treating [his] pain," in violation of the Eighth and Fourteenth Amendments. Id. ¶ 42.[8]

With respect to Dr. F. Cruz-Vera, Berger asserts that the doctor was deliberately indifferent to a serious medical need because he provided delayed or cursory medical care. Id. at p. 12 & ¶¶ 43, 49. Berger states that on November 9, 2020, he "attended [an] urgent sick call follow up for injuries sustained on Oct. 20, 2020." Id. p. 12, ¶ 43. According to Berger, Dr. Cruz-Vera said: "Berger this is only [a] courtesy visit as I have gotten several phone calls from Warden Lane and Assistant Director Mr. Palmer about [the situation]. Berger I am not getting involved with this." Id.; see also id. ¶ 46.[9] Berger asserts that Dr. Cruz-Vera did not examine the injured areas, but told Berger that if the nurse called him about swelling in the groin or testicle area, he would accept the nurse's medical judgment. Id. p. 12, ¶ 43, ¶ 46. Berger contends that Dr. Cruz-Vera's failure to examine his injuries or treat his pain constituted deliberate indifference to a serious medical need, in violation of his constitutional rights, and negligence under state law. Id. p. 14, ¶¶ 43–49.

---

[8]     Berger says he was "systematically denied medical treatment by medical personnel" at Suwannee CI and Santa Rosa CI, id. ¶ 32, but he does not name any defendants from Santa Rosa CI.

[9]     According to Berger, Dr. Cruz-Vera also told him that Lane had instructed him to take away Berger's cane. Id. ¶ 48.

Finally, Berger asserts that all Defendants committed assault, battery, and negligence under state law, and he invokes the Court's supplemental jurisdiction over these state law claims. Id. ¶ 55.

As a result of the Defendants' actions, Berger alleges that he suffered "excruciating pain" and swelling in his chest and testicle area. Id. p. 14, ¶¶ 43–48. As relief, he requests $150,000, per person, in compensatory damages from Godwin, Allen, Waldron, and Palmer for using excessive force, id. ¶ 57, $75,000, per person, in compensatory damages from Lane, Anderson, and Palmer for failing to intervene, id. ¶ 58, and $150,000 in compensatory damages, jointly and severally, from all Defendants for deliberate indifference to a serious medical need, id. ¶ 59. Berger also requests $100,000 in punitive damages against all Defendants "for the reckless and callous disregard of clearly established rights." Id. ¶ 60. Additionally, Berger requests injunctive relief in the form of receiving "necessary medical treatment" and a restraining order against all Defendants, id. ¶ 61, and asks that Defendants Godwin, Allen, Waldron, and Palmer be criminally prosecuted for federal civil rights violations, id. ¶ 54.

### III.   Governing Law

### A. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]"

10

which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

In assessing the Complaint, the Court must read Berger's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). Nevertheless, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010)); Freeman v. Sec'y, Dept. of Corr., 679 F. App'x 982, 982 (11th Cir. 2017).

## B. The Prison Litigation Reform Act

The Prison Litigation Reform Act (PLRA) requires that Berger exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 ... until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92–93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Indeed, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones v. Bock, 549 U.S. 199, 211 (2007). The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory ... and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA ... requires proper exhaustion," as set forth in the applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of

administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Notably, the Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). In doing so, the Court identified three circumstances where administrative remedies would be considered unavailable, despite existing on the books, because they are not capable of use to obtain relief:

> (1) when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process though machination, misrepresentation, or intimidation."

Varner v. Shepard, 11 F.4th 1252, 1258 (11th Cir. 2021) (citing Ross, 136 S. Ct. at 1859–60), cert. petition pending, No. 21-6819 (filed Jan. 11, 2022).

Although exhaustion of administrative remedies is mandatory, an inmate such as Berger need not "specially plead or demonstrate exhaustion in [his] complaint[ ]." See Jones, 549 U.S. at 216. Instead, the United States

13

Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. As such, Defendants bear "the burden of proving that [Berger] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit Court of Appeals has articulated a two-step process for the courts to employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) ("Whatley I"). In accordance with this authority, the Court addresses the parties' competing positions on whether Berger's federal § 1983 claims should be dismissed for failure to exhaust his administrative remedies as required by the PLRA.

## IV.  Discussion

### A. The Parties' Positions on Exhaustion

In the Complaint, Berger states that Defendants deterred him from filing a grievance about the alleged retaliation, use of excessive force, and deliberate medical indifference because (1) Lane shredded the two grievances about living conditions and (2) Defendants retaliated against him for filing those two grievances. Complaint ¶ 63. Berger also cites Rule 33-103.015(6) of the Florida Administrative Code ("F.A.C.") which provides:

> At no time will an inmate who is alleging that he was physically abused as described in Section 944.35(3), F.S., or alleging reprisal by staff, as defined in Rule 33-103.002, F.A.C., be directed to submit his or her grievance to the staff person who is the subject of the complaint, nor will the grievance be referred to a staff person who is the subject of the complaint.

F.A.C. r. 33-103.015(6); see also Complaint ¶ 64.

Defendants argue that Berger's Complaint must be dismissed because he failed to file any grievance about the matters alleged in the Complaint. They assert that administrative remedies were available to Berger but he failed to exhaust them before filing the Complaint, as the PLRA requires. See, e.g., Allen, Lane, and Henck's Motion to Dismiss (Doc. 18) at 3–12.[10] In support,

---

[10]      The various Defendants' arguments about exhaustion are essentially the same in each Motion to Dismiss. See also Palmer and Godwin's Motion to Dismiss (Doc. 34) at 3–12; Anderson's Motion to Dismiss (Doc. 40) at 4–12; Cruz-Vera's Motion to Dismiss (Doc. 47) at 4–11; Waldron's Motion to Dismiss (Doc. 64) at 4–12.

      Likewise, Berger's responses to each Motion to Dismiss are virtually identical as far as exhaustion is concerned. See Response to Allen, Lane, and Henck's Motion to Dismiss (Doc. 42) at 9–14; Response to Palmer, Godwin, and Anderson's Motions to Dismiss (Doc. 52) at 9–

Defendants submit logs and copies of Berger's grievances for the period beginning September 1, 2020, and ending August 10, 2021. (Doc. 18-1, Def. Composite Exhibit A, Grievance Records). During that time, Berger filed fifteen informal grievances, ten formal grievances, five grievance appeals, and one direct grievance with the FDOC Secretary's Office, but none concerned the matters alleged in the Complaint. See id. Based on the grievance records, Defendants argue that Berger failed to exhaust administrative remedies.

Defendants also argue that, despite Berger's allegations about retaliation, threats of reprisal, and the destruction of grievances, the grievance logs show he was not deterred or prevented from filing grievances about other incidents. Defendants point out that, while Berger accuses Lane of destroying two of his grievances (Numbers 230-2010-0077 and 2010-230-052), the grievance records show that those grievances were logged and answered. Defendants also argue that Berger knew of the ability to file a direct grievance of reprisal with the FDOC Secretary's Office because he did so on another occasion, but he did not avail himself of that avenue here. As for Berger's reference to F.A.C. Rule 33-103.015(6), Defendants argue this rule undercuts Berger's position because the rule ensures that any grievance about staff assault will not be handled by the staff members who were allegedly involved.

14; Response to Cruz-Vera's Motion to Dismiss (Doc. 65) at 9–14; Response to Waldron's Motion to Dismiss (Doc. 70) at 9–14.

Based on these arguments, Defendants contend Berger cannot show that administrative remedies were unavailable to him.

Notably, Berger does not deny that he never filed a grievance regarding the allegations in the Complaint. Nor does he dispute the accuracy and completeness of Defendants' grievance records. Instead, Berger argues that Defendants made the administrative remedies unavailable to him. See, e.g., Response to Allen, Lane, and Henck's Motion to Dismiss (Doc. 42) at 9–14. He asserts that Lane destroyed the two grievances about living conditions (Informal Grievance 230-2010-0077 and Formal Grievance 2010-230-052), that Defendants assaulted him for filing those grievances, and that Defendants threatened him not to file additional grievances. See id. For example, according to Berger, Palmer told him after he was assaulted in Lane's office that whatever happened in Lane's office would remain there, and if not, Palmer would (1) keep Berger in close management confinement and (2) "have your black ass bent and shipped to FSP so fast your head will spin. That's if my officers leave you with a head." Id. at 7, 14. Thus, Berger contends that administrative remedies were unavailable to him because Defendants' threats deterred him from filing a grievance.

Berger submits some exhibits to support his contentions. (See Doc. 42-1, Berger's Exhibits). The exhibits consist of: (1) a copy of Informal Grievance 230-2010-0077, in which Berger complained of unsanitary living conditions

17

and mold on the food trays (Berger's Ex. A-1); (2) a receipt acknowledging Formal Grievance 2010-230-052 (Berger's Ex. A-2); (3) a report, dated September 4, 2020, in which an FDOC officer recommended that Berger no longer warranted close management status (Berger's Ex. A-3); (4) four inmate sick-call requests (Berger's Ex. B-1 to B-4), including two where Berger complained of injuries allegedly sustained on October 20, 2020, Berger's Exs. B-2, B-3, although only one bears a signature by medical staff, Berger's Ex. B-3; and (5) a document titled "Witness Statement," signed only by Berger, on which he wrote November 5, 2020, as the date and stated that he "refuse[d] to give a statement" yet went on to describe Defendants' alleged retaliatory actions on October 20, 2020 (Berger's Ex. C-1). Berger later submitted an additional exhibit, which is a letter to the FDOC's Department of Financial Services, Division of Risk Management, bearing a date of October 27, 2020. Response to Cruz-Vera's Motion to Dismiss (Doc. 65) at 34 (Berger's Ex. C-3).[11] In the letter, Berger stated his intent to sue Palmer, Anderson, Lane, Allen, Godwin, Waldron, Henck, and a nurse for monetary damages and injunctive relief based on the alleged use of excessive force, failure to intervene, and cruel

---

[11]     Berger's exhibit lists refer to an unnotarized affidavit, Exhibit "C-2," (see, e.g., Doc. 42-1 at 1), but none of Berger's Responses includes this affidavit.

and unusual punishment.[12] The letter does not mention retaliation or threats of reprisal.

## B. Florida's Grievance Procedures

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). In Florida, the FDOC rules found in Chapter 33-103 of the F.A.C. provide inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824. However, the ordinary three-step procedure need not apply in all instances. For example, a prisoner may skip the informal

---

[12] Berger does not contend that his sick-call requests or his letter to the Division of Risk Management qualified as grievances. Indeed, these are not part of FDOC's grievance procedure. See generally, F.A.C. Chapter 33-103.

grievance step and immediately file a formal grievance for certain issues, such as emergency grievances and medical issues. F.A.C. r. 33-103.005(1); id., r. 33-103.006(3)(c). Alternatively, for issues like emergency grievances and grievances of reprisal, a prisoner may bypass the institutional level altogether and file a grievance directly with the FDOC Secretary's Office. Id., r. 33-103.007(3)(a).

The FDOC rules provide time frames for submitting grievances. Informal grievances must be received within twenty days of the date on which the incident or action that is the subject of the grievance occurred. See id., r. 33-103.011(1)(a). Formal grievances must be received within fifteen days from the date of the response to the informal grievance, see id., r. 33-103.011(1)(b)1, or if the inmate is skipping the informal grievance step, within fifteen days from the date on which the incident or action being grieved occurred, id., r. 33-103.011(1)(b)2. Similarly, grievance appeals to the FDOC Secretary's Office must be received within fifteen days from the date the response to the formal grievance is returned to the inmate, see id., r. 33-103.011(1)(c), or if the inmate is filing a grievance directly with the FDOC Secretary's Office, within fifteen days from the date on which the incident or action being grieved occurred, id., r. 33-103.011(1)(d). Rule 33-103.011(2) also provides:

> An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority … or the Secretary that it was not feasible to file

20

the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in rule 33-103.014, F.A.C.

Id., r. 33-103.011(2).

## C. Analysis of Berger's Exhaustion Efforts

At step one of the Turner exhaustion analysis, a district court must accept the plaintiff's version of the facts as true if the plaintiff's version of the facts conflicts with the defendants' version. Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082. According to Berger, he did not exhaust his administrative remedies because Lane's destruction of grievances and Defendants' threats of reprisal made the grievance process unavailable to him. While Defendants deny his contentions, the Court must accept Berger's assertions at step one and proceed to step two of the Turner analysis.

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific factual findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citations omitted). In resolving factual disputes about exhaustion, a district court may "consider facts outside of the pleadings … so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d

at 1376.[13] As such, a district court may consider affidavits and exhibits and make credibility determinations. Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) ("Whatley II") ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Whatley's exhibits.").

In his response to Defendants' Motions, Berger focuses primarily on the merits of his claims rather than the exhaustion defense raised by Defendants. Nevertheless, it appears that he contends that his failure to exhaust should be excused because "prison administrators thwart[ed him] from taking advantage of [the] grievance process through machination, … or intimidation," Ross, 136 S. Ct. at 1860.[14] Thus, the question to be resolved at step two of the Turner analysis is whether, in fact, Defendants made administrative remedies unavailable to Berger.

Berger asserts that Lane shredded two of his grievances, thwarting him from using the grievance process. But that argument is unavailing. The record refutes any claim that Lane destroyed the grievances because the two grievances he allegedly shredded, Informal Grievance 230-2010-0077 and

---

[13]     Berger does not contend he has not had a "sufficient opportunity to develop a record." Id. And resolving the exhaustion issue does not decide the merits of this case.

[14]     In his Responses to the Motions to Dismiss, Berger appears to abandon any suggestion that F.A.C. Rule 33-103.015(6) precluded him from filing a grievance at Suwannee CI. If Berger has not abandoned that argument, the Court rejects it because this rule protects an inmate from having a grievance routed through the hands of a staff member accused of abuse. The rule does not preclude an inmate from filing a grievance at the institutional level.

Formal Grievance 2010-230-052, were recorded in the grievance logs, responded to, and returned to Berger. See Def. Comp. Ex. A at 1, 2, 10, 15–16. Berger himself attached a copy of Informal Grievance 230-2010-0077 to his Response. Berger Ex. A-1 (Doc. 42-1). Further, these grievances were unrelated to the allegations in the Complaint of retaliation, excessive force, and deliberate indifference to a serious medical need. Thus, even if Lane destroyed these grievances, it would not explain Berger's failure to exhaust administrative remedies as to the issues he raises in the Complaint in this action. To the extent Berger suggests that Lane's destruction of the two grievances deterred him from filing further grievances, that argument fails given Berger's extensive grievance history, which is discussed below. Additionally, even if Berger believed any grievance he filed at Suwannee CI would be destroyed, the record reflects that he knew he could bypass the institutional level by filing a grievance of reprisal directly with the FDOC Secretary's Office under F.A.C. Rule 33-103.007(3)(a). See Allen, Lane, and Henck's Motion to Dismiss (Doc. 18) at 10. Indeed, Berger did just that about a different incident in Grievance Appeal 20-6-41794. Def. Comp. Ex. A at 30.

Berger also contends that Defendants' alleged retaliation and threats of reprisal deterred him from filing a grievance. The Eleventh Circuit has recognized that "a prison official's serious threats of substantial retaliation against an inmate" for filing a grievance in good faith can make administrative

remedies "unavailable." <u>Turner</u>, 541 F.3d at 1085. In doing so, the court explained that a prison official's serious threats of substantial retaliation will excuse the exhaustion requirement if two conditions are met:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

<u>Id.</u>[15] In determining whether a plaintiff has made this showing, a court may "consider[] [a plaintiff's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or … destroy his grievances." <u>Whatley II</u>, 898 F.3d at 1083. "While the burden is on

---

[15]     In his Responses, Berger often relies on First Amendment retaliation case law to support his argument that he should be excused from the exhaustion requirement. <u>See</u>, <u>e.g.</u>, Response to Allen, Lane, and Henck's Motion to Dismiss (Doc. 42) at 9–14 (citing, <u>e.g.</u>, <u>O'Bryant v. Finch</u>, 637 F.3d 1207 (11th Cir. 2011); <u>Smith v. Mosley</u>, 532 F.3d 1270 (11th Cir. 2008); <u>Bennett v. Hendrix</u>, 423 F.3d 1247 (11th Cir. 2005); <u>Pittman v. Tucker</u>, 213 F. App'x 867 (11th Cir. 2007)). He also argues that a jury must decide "genuine issues of material fact" pertaining to exhaustion. <u>See id.</u> at 13. In doing so, Berger conflates a substantive First Amendment retaliation claim with an argument that a prison official's serious threats of substantial retaliation made administrative remedies unavailable.
    A key difference between the two is that a substantive claim of retaliation under the First Amendment contains <u>no</u> subjective element, meaning it is irrelevant if a defendant's retaliatory conduct failed to prevent a plaintiff from engaging in constitutionally protected speech. <u>See</u> <u>Bennett</u>, 423 F.3d at 1251–52 (explaining why a First Amendment retaliation claim contains no subjective element). In contrast, an argument that the threat of retaliation made administrative remedies unavailable <u>does</u> contain a subjective element, which requires a prisoner to show that he was actually deterred from pursuing the grievance process. <u>Turner</u>, 541 F.3d at 1085. Further, a First Amendment retaliation claim is a substantive cause of action, such that any genuine dispute of material fact must be resolved by a jury, not a court. <u>See</u> <u>Moton v. Cowart</u>, 631 F.3d 1337, 1342–43 (11th Cir. 2011) (reversing grant of summary judgment on a First Amendment retaliation claim because there were genuine disputes of material fact). In contrast, because exhaustion is a matter in abatement, a district court may resolve factual disputes about the availability of administrative remedies. <u>See</u> <u>Bryant</u>, 530 F.3d at 1373–78.

the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to <u>Turner</u>, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." <u>Geter v. Baldwin State Prison</u>, 974 F.3d 1348, 1356 (11th Cir. 2020) (citing <u>Turner</u>, 541 F.3d at 1085); <u>id.</u> at 1356 n.14 ("But once the [prison official] has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (quoting <u>Rinaldi v. United States</u>, 904 F.3d 257, 268 (3d Cir. 2018))).

Defendants have established that the FDOC has an administrative grievance process and that Berger failed to resort to the FDOC's established grievance process – facts which Berger does not dispute. Thus, the burden shifts to Berger to "demonstrate that the [FDOC's] grievance procedure was 'subjectively' and 'objectively' unavailable to him." <u>Id.</u> at 1356. With respect to the objective component, the Court assumes that being assaulted for filing past grievances, and being threatened with assault, transfer, or close management for filing future grievances – if these things happened – would deter a person of ordinary firmness from filing a grievance. However, Berger fails to show that "the threat[s] actually did deter [him] from lodging a grievance or pursuing a particular part of the process" for the claims raised in this action. <u>Turner</u>, 541 F.3d at 1085. As such, Berger has failed to carry his burden of showing "that

the grievance procedure was 'subjectively' … unavailable to him." <u>Geter</u>, 974 F.3d at 1356.

Berger has an extensive record of filing grievances. Indeed, he did so in both the weeks before and the weeks after the alleged events of October 20, 2020. <u>See</u> Def. Comp. Ex. A. Between September 1, 2020, and August 10, 2021, Berger availed himself of the grievance process thirty-one times, including eight times between September 25, 2020, and October 21, 2020, while he was at Suwannee CI. Berger's history of filing grievances, by itself, is "evidence that the defendants did not make administrative remedies unavailable to him or … destroy his grievances." <u>Whatley II</u>, 898 F.3d at 1083; <u>see</u> <u>Halpin v. Crist</u>, 405 F. App'x 403, 407 (11th Cir. 2010) ("To the extent that [plaintiff] argues that he was unable to file grievances for fear of retaliation, his argument is severely undermined by the record of multiple unrelated grievances he filed, both before and after the alleged incident giving rise to the fear of reprisal.").

In particular, Berger signed an informal grievance on October 20, 2020, the very same day he alleges he was beaten and threatened with reprisal if he continued filing grievances. <u>See</u> Def. Comp. Ex. A at 4 (Informal Grievance No. 230-2010-0194). In this grievance, which Berger addressed to the Warden, Berger complained that prison officials were obstructing his access to the courts because they were not processing requests to withdraw funds to pay legal fees. <u>See</u> <u>id.</u> While Berger could have submitted this grievance before he

was allegedly assaulted in Lane's office, he makes no such claim. Moreover, a comparison of Berger's allegations and the informal grievance betrays that possibility. According to Berger's allegations, he was escorted to Lane's office around 9:00 a.m. on October 20, 2020. Complaint ¶ 7; see also, e.g., Response to Allen, Lane, and Henck's Motion to Dismiss (Doc. 42) at p. 3, ¶ 7. Berger waited in the classification lobby for an unspecified period of time before he was taken into Lane's office and attacked for filing grievances. Berger signed Informal Grievance 230-2010-0194 that same day, but the grievance was stamped "received" a day later, October 21, 2020. Def. Comp. Ex. A at 4. Thus, Berger either signed the grievance on October 20, 2020, and turned it in on October 21, 2020, or he signed and submitted the grievance later in the day on October 20, 2020, such that it was not received until the next day.[16] In either event, Berger appears to have submitted Informal Grievance 230-2010-0194 after the altercation in Lane's office, showing he was not deterred from filing grievances at Suwannee CI.

Even if Berger was genuinely deterred from filing an informal or formal grievance at Suwannee CI, he could have bypassed the institutional level by filing a grievance of reprisal directly with the FDOC Secretary's Office. See

---

[16]    Either interpretation conforms with F.A.C. Rule 33-103.015(11), which states, "Provisions shall be made to ensure that grievances submitted by confinement inmates are collected on a daily basis." Notably, other grievances of Berger's were stamped "received" by his institution on the same day he signed them. See Def. Comp. Ex. A at 2, 5, 9, 17, 21, 25.

F.A.C. r. 33-103.002(9), (15)(d)2; <u>id.</u>, r. 33-103.007(3)(a). And had he done so, Berger could have submitted such a grievance in a sealed envelope. <u>Id.</u>, r. 33-103.007(5)(e). Berger does not contend that he was unaware of his ability to bypass the institutional grievance process. <u>See</u> <u>id.</u>, r. 33-103.015(10) ("A copy of these rules shall be available for access by inmates at a minimum in the inmate library and from the housing officer of any confinement unit."); <u>see also</u> <u>Garcia v. Obasi</u>, No. 21-12919, 2022 WL 669611, at *3–4 (11th Cir. Mar. 7, 2022) (affirming dismissal for failure to exhaust where it was undisputed that grievance procedures were explained to plaintiff when he arrived at the prison, the complete procedures were available in the prison library, and plaintiff had exhibited some familiarity with the grievance process; finding that plaintiff waived argument that procedures were not available because not explained in Spanish where he did not raise that argument to the district court). Indeed, Berger apparently was aware of the procedure for filing a grievance of reprisal directly with the FDOC Secretary's Office because he did just that as to another incident. <u>See</u> Def. Comp. Ex. A at 30. And Berger was not shy about writing to the FDOC's Division of Risk Management about the events alleged in the Complaint. Only seven days after the events of October 20, 2020, he wrote the Division of Risk Management to communicate his intent to sue the very Defendants who allegedly threatened him with retaliation. Berger's Ex.

C-3 (Doc. 65 at 34).[17] If Berger could write that letter, he could have submitted a grievance of reprisal directly with the FDOC Secretary's Office. Yet Berger did not do so.

Alternatively, Berger could have filed a grievance when he transferred to Santa Rosa CI less than a month after the incident. The record reflects that Berger did file an informal grievance at Santa Rosa CI on November 18, 2020, see Def. Comp. Ex. A at 5, but he did not file a grievance with respect to the events of October 20, 2020. "[T]hreats of retaliation will not excuse a failure to exhaust where the prisoner has been removed from the threats such that they no longer pose an impediment to completion of administrative procedures." McNeely v. Sec'y, Fla. Dep't of Corr., No. 3:16-cv-377-MMH-MCR, 2019 WL 448379, at *5 (M.D. Fla. Feb. 5, 2019) (citing Bryant, 530 F.3d at 1379); see also Poole v. Rich, 312 F. App'x 165, 167–68 (11th Cir. 2008) ("Even if we assume that Poole was threatened and that these threats rendered grievance procedures at Rogers [State Prison] unavailable to Poole, Poole's complaint is still due to be dismissed because he has failed to allege that grievance procedures were unavailable to him once he was no longer incarcerated at Rogers and was removed from the threats of violence made by the officials at that prison.").

---

[17]    To reiterate, Berger does not contend that the letter to the Division of Risk Management qualifies as a grievance, and such a letter is not part of FDOC's grievance procedure. See supra, p. 15 n.12. Notably, the letter does not mention threats of reprisal.

The circumstances of Berger's case resemble those in <u>Bryant v. Rich</u>, where the Eleventh Circuit Court of Appeals concluded that two Georgia prisoners failed to exhaust their administrative remedies despite receiving threats of reprisal from staff at a prior institution. 530 F.3d at 1373–79. One prisoner, Andrew Priester, alleged that he was beaten at Rogers State Prison but did not file any grievances, either at Rogers or a subsequent institution, because his requests for the pertinent forms were unanswered or denied and because "Rogers officials deterred him from filing grievances through the threat of violence." <u>Id.</u> at 1373. Assuming that grievance procedures were unavailable to Priester at Rogers State Prison, the Eleventh Circuit nevertheless concluded that they were available to him once he transferred to Georgia State Prison (GSP). <u>Id.</u> The court reached this conclusion despite the fact that a grievance filed at GSP would have been untimely. The court explained:

> [A] grievance filed after Priester's transfer to GSP would have been untimely. But the relevant grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause. Thus, Priester could have exhausted his administrative remedies by filing a grievance at GSP and then by showing good cause for its tardiness.

<u>Id.</u> But because Priester did not try to file an out-of-time grievance at GSP and there was no allegation that GSP staff deterred him from doing so through threats of reprisal, the court concluded that Priester failed to exhaust available

30

administrative remedies. Id. at 1373, 1378. The court reached the same conclusion as to another prisoner, Gregory Bryant, stating,

> Like Priester, Bryant was later transferred to another prison where the threat of violence was removed. There, he could have filed an out-of-time grievance and then shown good cause for its untimeliness. Because he did not, Bryant failed to exhaust an administrative remedy that was available to him.

Id. at 1379. See also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Like Priester and Bryant, Berger could have filed a grievance at Santa Rosa CI but he did not. Berger transferred from Suwannee CI to Santa Rosa CI on or around November 16, 2020, see Def. Comp. Ex. A at 5, less than a month after the events of October 20, 2020. Now out of the reach of Warden Lane and the other Defendants, he could have sought an extension of time and initiated a grievance at Santa Rosa CI about the alleged retaliation, assault, and denial of medical care at Suwannee CI.[18] See Bryant, 530 F.3d at 1373, 1379. Although such a grievance would have been outside the 15- or 20-day window for filing a grievance, Berger could have requested an extension of

---

[18]    Notably, Santa Rosa CI is in Region 1 of the FDOC, whereas Suwannee CI is in Region 2. Thus, when Berger transferred from Suwannee CI to Santa Rosa CI, not only was he beyond the reach of Warden Lane, Assistant Warden Godwin, and Assistant Warden Allen, et al., he was also beyond the reach of Regional Director Palmer and Assistant Regional Director Anderson.

time.[19] Florida's grievance protocol, like Georgia's grievance protocol discussed in <u>Bryant</u>, grants inmates additional time to file a grievance upon a showing of good cause. <u>See</u> F.A.C. r. 33-103.011(2). In addition, FDOC's grievance procedures allow an inmate to file a grievance at his or her current institution about an incident that occurred at a different institution, and "it shall remain the responsibility of the staff at the inmate's present location to handle the informal or formal grievance." F.A.C. r. 33-103.015(4). Nevertheless, Berger made no effort to file an out-of-time grievance at Santa Rosa CI.

Moreover, Berger does not allege that staff at Santa Rosa CI did anything to deter him from filing a grievance about the alleged retaliation, assault, and denial of medical care at Suwannee CI. <u>See</u>, <u>e.g.</u>, Response to Allen, Lane, and Henck's Motion to Dismiss (Doc. 42) at 9–14; <u>see also</u> Complaint ¶¶ 63–64. Nor does Berger, who was apparently familiar with the grievance process, allege that he was unaware of (or unable to learn about) his ability to request an extension of time to file a grievance. <u>See</u> F.A.C. r. 33-103.015(10) ("A copy of these rules shall be available for access by inmates at a minimum in the inmate library and from the housing officer of any confinement unit."); <u>Garcia</u>, 2022 WL 669611, at *3.

---

[19]     Importantly, Berger would not even have needed an extension of time to file a grievance about Dr. Cruz-Vera's alleged denial of medical care. Berger alleges that Dr. Cruz-Vera provided cursory medical care during a visit on November 9, 2020, Complaint at p. 12, ¶ 43, only seven days before Berger arrived at Santa Rosa CI, <u>see</u> Def. Comp. Ex. A at 5.

The Supreme Court instructed in <u>Ross</u> that "all inmates must now exhaust <u>all</u> available remedies." 136 S. Ct. at 1858 (emphasis added). Here, the record establishes that Berger had avenues available for pursuing his administrative remedies, whether by filing an informal grievance, a grievance of reprisal directly with the FDOC Secretary's office, or an out-of-time grievance once he arrived at Santa Rosa CI. But because Berger did not do any of these, the Court finds that he failed to exhaust available administrative remedies, <u>see</u> <u>Bryant</u>, 530 F.3d at 1373, 1379; <u>Harper</u>, 179 F.3d at 1312; <u>McNeely</u>, 2019 WL 448379, at *10. As such, his § 1983 claims are due to be dismissed without prejudice.[20]

## V.   State Law Claims

In the Complaint, in addition to his federal § 1983 claims, Berger also asserts claims for relief under Florida state law, including claims of assault, battery, and negligence. <u>See</u> Complaint ¶¶ 51, 55. The PLRA's exhaustion requirement applies only to an action "brought with respect to prison

---

[20]     Dr. Cruz-Vera argues that the Court should dismiss the Complaint with prejudice because the timeframe to grieve the issues raised in the Complaint has closed. Cruz-Vera's Motion to Dismiss (Doc. 47) at 10. While there may be instances where a court should dismiss § 1983 claims with prejudice for lack of exhaustion, <u>Bryant</u>, 530 F.3d at 1375 n.11, the Court declines to do so here. Although any grievance Berger might now seek to file about the alleged retaliation, assault, and denial of medical care at Suwannee CI would be outside of Rule 33-103.011's timeframes, the FDOC rules allow him to request an extension of time. <u>See</u> F.A.C. Rule 33-103.011(2). The FDOC could also waive compliance with its grievance procedures. Because attempting exhaustion is not necessarily futile, the Court will not dismiss the § 1983 claims with prejudice. Moreover, Berger's failure to exhaust does not bar his claims under <u>state</u> law. <u>See</u> 42 U.S.C. § 1997e(a).

conditions under section 1983 of this title, or any other Federal law." 42 U.S.C. § 1997e(a). Thus, Berger's failure to exhaust administrative remedies is not dispositive of his state law claims. However, the Court has determined that Berger's federal § 1983 claims over which the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 are due to be dismissed. Thus, the Court must now consider whether to continue to exercise supplemental jurisdiction over the remaining state law claims.

"The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004). Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state claim if:

 (1) the claim raises a novel or complex issue of State law,

 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

 (3) the district court has dismissed all claims over which it has original jurisdiction, or

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).[21] Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental

---

[21] In § 1367, Congress codified the concepts of pendent and ancillary jurisdiction under the umbrella label of supplemental jurisdiction. Artis v. Dist. of Columbia, 138 S. Ct. 594, 598 (2018).

state law claims." <u>Parker v. Scrap Metal Processors, Inc.</u>, 468 F.3d 733, 743 (11th Cir. 2006). However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction." <u>Palmer v. Hosp. Auth. of Randolph Cnty.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994). Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over Berger's state law claims. Thus, the Court declines to exercise supplemental jurisdiction over these claims.

For the reasons set forth above, the Court has determined that the § 1983 claims in the Complaint, over which the Court has original jurisdiction, are due to be dismissed. What remain are uniquely state law claims that are best addressed by the state courts. This case has not been pending for an extended period of time, and Berger's time in federal court has not moved beyond determining whether he exhausted his administrative remedies as required by the PLRA. The Court has not issued any dispositive rulings pertaining to the state law claims, and no discovery deadlines have been set. Thus, the procedural posture of the case weighs in favor of declining jurisdiction to allow the case to proceed fully in state court.

Moreover, when, as here, the federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to

dismiss any remaining state claims." <u>Raney</u>, 370 F.3d at 1089; <u>Busse v. Lee Cnty.</u>, 317 F. App'x 968, 973-74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."). <u>See also</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," <u>see</u> <u>Palmer</u>, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Berger's remaining state law claims. Accordingly, Berger's state law claims, including those for assault, battery, and negligence, are due to be dismissed without prejudice to Berger refiling these claims in the appropriate state court.

Accordingly, it is hereby **ORDERED:**

1. Defendant Anderson's request to accept his Motion to Dismiss as timely (Doc. 40 at 2–3) is **GRANTED**.

2. Defendants' Motions to Dismiss (Docs. 18, 34, 40, 47, 64) are **GRANTED in part** and **DENIED in part**:

   a. The Motions are **GRANTED** to the extent that Berger's federal § 1983 claims are **DISMISSED without prejudice** based on his failure to exhaust administrative remedies, and his state law claims are **DISMISSED without prejudice** to refiling in the appropriate state court.

   b. In all other respects, the Motions are **DENIED**.

3. Berger's Request to Stay Proceedings (Doc. 68) is **DENIED AS MOOT**.

4. The Clerk shall enter judgment dismissing the case without prejudice, terminate any pending motions, and close the file.

   **DONE AND ORDERED** at Jacksonville, Florida this 16th day of March, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc 19
Copies:
Parties and counsel of record